UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY GILLESPIE,
                               Plaintiff,

    vs.                                                    9:08-CV-1339 (TJM/ATB)

NEW YORK STATE DEPARTMENT
OF CORRECTIONAL SERVICES, ET AL.
                               Defendants.
_____

ANTHONY GILLESPIE, Plaintiff *pro se*
MICHAEL MCCARTIN, AAG, Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge. The case was recently re-assigned from Magistrate Judge George H. Lowe to this court.

     In this civil rights complaint, plaintiff alleges that four individual defendants employed by the New York State Department of Correctional Services ("DOCS") denied him adequate medical care, in violation of the Eighth Amendment, while plaintiff was an inmate in the custody of the Mid-State Correctional Facility ("Mid-State") in 2008. (Dkt. No. 1). The complaint also makes passing references to the alleged violation of his rights under the "Patient's Bill of Rights" and the "Disability Act." Plaintiff seeks substantial monetary damages and other relief.

     Presently before this court is the defendants's motion to dismiss the complaint

for failure to state a viable claim, pursuant to FED. R. CIV. P.12(b)(6). (Dkt. No. 21). Plaintiff filed a responsive affidavit and memorandum of law. (Dkt. No. 27). For the following reasons, this court recommends that the plaintiff's complaint be dismissed, without prejudice, in its entirety.

## DISCUSSION

I.  **Facts and Procedural History**

Plaintiff was transferred to Mid-State in early April 2008.[1] On April 24, 2008, plaintiff saw defendant Manava, a DOCS physician at Mid-State, and complained of lower back pain due to osteoarthritis. Plaintiff requested certain modes of treatment and medical orders that he had received at various prior times in other DOCS facilities–a "back brace, physical therapy, a permit for no lifting of over 25 pounds, no sitting for over 25 minutes, bottom bunk permit, light duty," and an outside consultation for an MRI. (Complaint ¶¶ 14-16). Dr. Manava examined plaintiff and observed that he had no trouble walking, bending, or doing daily chores and that he had no deformity or prior injury. Dr. Manava referred to prior X-rays of plaintiff and concluded that an MRI was not required. He also determined that plaintiff did not meet the requirements for assignment to a bottom bunk.[2] Dr. Manava continued

---

[1] Plaintiff referenced in his complaint attached DOCS Ambulatory Health Records ("AHRs") and other DOCS medical records, as well as documentation of his extensive complaints and grievances to DOCS regarding his medical care in 2008. (Exs. A-P, Dkt. No. 1-2). These exhibits to the complaint are referenced in outlining the facts set forth herein.

[2] In various attachments to the complaint, plaintiff attempts to document that Dr. Manava's denial of a bottom bunk restriction was contrary to DOCS Health Care Services Policy No. 1.49, which includes, among the criteria for placement in a lower bunk, a "permanent physical disability, . . . *e.g.* rheumatoid arthritis." (Ex. A, Dkt. No. 1-2 at 4; Ex. C, Dkt. No. 1-2

2

plaintiff's prescription for Naproxen and recommended that he do stretching exercises. (Ex. A, Dkt. No. 1-2 at 2).

Over the next three months, plaintiff wrote a series of complaints and formal grievances[3] to various DOCS officials complaining of Dr. Manava's failure to order the types of treatment and accommodations that he had previously enjoyed at other DOCS facilities. On April 24, 2008, plaintiff wrote a letter to defendant Harris, a Nurse Administrator at Mid-State, who replied, the next day, that she could not override the medical decisions of a treating physician. (Complaint ¶ 18-19; Ex. C, Dkt. No. 1-2 at 21-23).

On May 8, 2008, plaintiff sent a letter of complaint about Dr. Manava and Nurse Administrator Harris to defendant Ramineni, the Facilities Health Services Director at Mid-State, but received no reply. (Complaint ¶21; Ex. E, Dkt. No. 1-2 at 32-34). Plaintiff penned another letter on May 18th to Dr. Ramineni, who replied two

---

at 21-22). While it is unnecessary to discuss the differences between these two forms of arthritis in connection with this motion, it is commonly understood that they are significantly different conditions and that rheumatoid arthritis is typically more disabling than osteoarthritis. *See, e.g.*, MedLinePlus website, a service of the U.S. National Library of Medicine and the National Institutes of Health:
http://www.nlm.nih.gov/medlineplus/ency/article/000431.htm (rheumatoid arthritis) and
http://www.nlm.nih.gov/medlineplus/ency/article/000423.htm (osteoarthritis).

[3] The court will discuss the various letters to named defendants which form the bases for plaintiff's allegations that they violated his Eighth Amendment rights. It is not necessary to detail the several formal grievances which the plaintiff also submitted during the same time period in 2008. Defendants' motion does not assert that the plaintiff failed to exhaust his administrative remedies; and plaintiff documents that he pursued and appealed formal grievances. In response to the grievances, DOCS consistently upheld the decisions of its medical staff, but did recommend that plaintiff continue to pursue his medical issues through sick call at the facility. DOCS also offered plaintiff the option to seek an outside medical opinion at his own expense. (Complaint, ¶¶ 20, 24-27, 36; Exs. D, G-H, O-P)

days later, stating that he had reviewed the plaintiff's chart and determined there was no medical basis for plaintiff's various requests for particular modes of treatment. (Complaint ¶¶ 22-23; Ex. F, Dkt. No. 1-2 at 36-37).  On May 21, 2008, plaintiff wrote a short note to Dr. Ramineni, asking him to reconsider his prior decision, to which no reply was received.  (Ex. F, Dkt. No. 1-2 at 38).

On June 3, 2009, plaintiff wrote a letter repeating the complaints about his medical treatment at Mid-State to defendant Wright, the Chief Medical Officer of DOCS.  (Complaint ¶ 28; Ex. I, Dkt. No. 1-2 at 49-51).  Dr. Wright referred the letter to Regional Health Services Administrator ("RHSA") Pedro Diaz.  By letter dated June 11th, RHSA Diaz summarized the course of plaintiff's prior treatment, advised that the facility physician was the final arbiter of medical decisions regarding plaintiff's care, and concluded that plaintiff's allegation that his health care needs were not being met were unsubstantiated.  (Complaint ¶ 29; Ex. J, Dkt. No. 1-2 at 54). Plaintiff directed his next letter of complaint to Brian Fischer, the DOCS Commissioner who is not named in this action.  Commissioner Fischer referred the letter to Dr. Wright who responded using language similar to the prior letter of RHSA Diaz.  (Complaint ¶¶ 30-31; Ex. K & I, Dkt. No. 1-2 at 55-59).  Dr. Wright and his staff repeatedly urged the plaintiff to address his health care issues using existing sick call procedures at the facility.

On July 22, 2008, plaintiff was again examined at Mid-State by Dr. Manava. The complaint alleges that plaintiff again mentioned his lower-back arthritis and complained that Naproxen was not helping meet "his medical needs."  Plaintiff claims

4

that Dr. Manava found nothing wrong with plaintiff's back and denied his requests for assistance. (Complaint ¶¶ 34-35). The AHR attached to the complaint reflects that the plaintiff complained of lower back pain and stiffness and stated that he had run out of Naproxen. Dr. Manava noted that plaintiff's prior X-rays confirmed mild degenerative osteoarthritis, but were otherwise normal. His examination indicated that plaintiff had no deformity and a full range of motion. He refilled plaintiff's Naproxen prescription and suggested that he use certain exercises and hot water showers to help address his symptoms. (Ex. B, Dkt. No. 1-2 at 14). Although not referenced in the complaint, the attached medical records indicate that plaintiff was also seen by the medical staff at Mid-State regarding his back and other health issues twice in August 2008. (Ex. B, Dkt. No. 1-2 at 14-15).

Plaintiff filed his complaint on December 12, 2008, naming the four defendants referenced above, as well as DOCS and "John/Jane Does 1-50 (DOCS) supervisory, training and policy personnel." The District Court denied plaintiff's request for class certification, dismissed DOCS as a defendant, and directed plaintiff to take reasonable steps to identify the John/Jane Doe Defendants. (Dkt. Nos. 4, 6). Ultimately, the plaintiff advised that he intended to proceed only against the four originally-named individual defendants, and the District Court dismissed the action against all other defendants. (Dkt. Nos. 16, 18).

The complaint appears to name defendants Wright, Harris, Ramineni, and Manava in both their official and individual capacities, and this court recommends that the action be dismissed to the extent it purports to sue these defendants in their

5

official capacities for damages.[4]  The complaint will be evaluated assuming that it makes claims against the DOCS defendants only in their individual capacities.

## II.    Motion to Dismiss

Defendants move to dismiss the complaint, arguing (1) that plaintiff cannot establish an Eighth Amendment claim because he cannot show that he suffered from a "serious" medical condition and because he is alleging mere disagreement with the medical judgment of DOCS physicians regarding appropriate treatment; (2) that Nurse Administrator Harris's deference to the medical decision of a prison physician cannot constitute "deliberate indifference"; (3) that defendants Wright and Ramineni were not personally involved in plaintiff's medical care and cannot be liable under Section 1983; and (4) that all of the defendants are entitled to qualified immunity.  This court concludes that plaintiff has failed to allege a viable claim that his disagreement with the medical decisions of DOCS physicians constituted deliberate indifference to his medical needs.  The complaint's passing reference to the Patients' Bill of Rights and the Americans with Disability Act also do not state a claim upon which relief can be granted.  Accordingly, this court recommends that the complaint be dismissed in its entirety, without prejudice.

---

[4] It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (*citing Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).  To the extent that the DOCS defendants are being sued in their official capacity for money damages, that cause of action should be dismissed under the Eleventh Amendment.  *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 414 (2d Cir. 1999).

### A.     Legal Standard for Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the

7

court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, in the case of a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to plaintiff's opposition papers. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (citation omitted). In this case, plaintiff has attached various exhibits to the complaint that the court has considered in making its ruling on defendants' motion.

### B. Inadequate Medical Care

#### 1. Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

##### a. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining

8

whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). However, in cases where the alleged inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### b. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health*

*Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.* Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### 2.    Application of Legal Standards

Defendants argue that plaintiff has failed to allege that he suffered from a sufficiently "serious" medical condition to satisfy the objective element of the Eighth Amendment standards for medical care. Noticeably missing in plaintiff's complaint are any factual allegations indicating that his degenerative osteoarthritis of his lower back constituted a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1996). The medical records attached to the complaint document that, over a period of three years, plaintiff periodically claimed to suffer pain, variously described as "intermittent," "chronic," "increasing"; but he only once used the term "severe" and never used other adjectives such as "extreme," "excruciating," or "unbearable." (Dkt. No. 1-2 at 8-15, 34, 42). It

11

is extremely questionable that plaintiff has alleged a medical condition that is sufficiently serious for the purposes of the Eighth Amendment. *See, e.g., Veloz v. New York*, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y.2004) (plaintiff's chronic back pain and mild to moderate degenerative arthritis of spinal vertebrae did not establish a serious medical need); *Taylor v. Kurtz*, 00-CV-0700, 2004 WL 2414847 at *2, *3-*4, 2004 U.S. Dist. LEXIS 27925 (W.D.N.Y. Oct. 28, 2004) (prisoner's degenerative arthritic knee condition did not constitute a serious medical need); *Veloz v. New York*, 35 F. Supp. 2d 305, 309, 312 (S.D.N.Y.1999) (prisoner's foot problem, which involved arthritis and pain, did not constitute a serious medical need); *Phillips v. Goord*, 08-CV-0957, 2009 WL 909593 at *6, 2009 U.S. Dist. LEXIS 29322 (W.D.N.Y. Apr. 1, 2009) (allegations of "chronic" back pain do not support a claim that plaintiff had a "serious" medical condition).

In any event, plaintiff's complaints about his medical care clearly are no more than disagreements with the medical judgment of the DOCS physicians about the particular modes of treatment and medical orders that were appropriate given his medical condition. Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). The mere fact that DOCS physicians in other facilities may have previously provided plaintiff with some of the treatments and accommodations he demanded at Mid-State does not render the medical decisions of Dr. Manava "deliberate indifference." *See, e.g.,Smith v. Woods*, 9:05-CV-1439

(LEK/DEP), 2008 WL 788573 at *2, *8, 2008 U.S. Dist. LEXIS 22191 (N.D.N.Y. March 20, 2008) (doctor's decision to prescribe Prozac to treat plaintiff's impulse control disorder was not an Eighth Amendment violation even though doctors in other institutions had prescribed Seroquel); *Ortiz v. Makram*, 96 Civ. 3285, 2000 WL 1876667 at *9-*10, 2000 U.S. Dist. LEXIS 18428 (S.D.N.Y. Dec. 21, 2000) (primary prison doctor was not deliberately indifferent to an inmate patient's serious medical needs when, after reviewing the report of a consulting urologist who recommended Percocet, he made a medical judgment to prescribe a different pain killer).

Dr. Manava's decisions to treat plaintiff's arthritis with Naproxen, as opposed to other medications;[5] his conclusion that plaintiff did not require an MRI in light of the results of prior X-rays;[6] his recommendation of exercise, instead of ordering physical therapy;[7] his failure to provide plaintiff a back-brace;[8] and his decisions not

---

[5] *See, e.g., Veloz v. New York*, 339 F. Supp. 2d at 525 (inmate's disagreement with his medical provider about whether he needed something stronger than Tylenol for his back pain did not constitute deliberate indifference to a serious medical need).

[6] *See, e.g., Nelson v. Rodas*, 01CIV7887, 2002 WL 31075804 at *14-*15, 2002 U.S. Dist. LEXIS 17389 (S.D.N.Y. Sept. 17, 2002) (citing cases) (inmate's complaint that the prison refused his request for a CAT scan and consultation with a specialist concerning his back spasms was not the proper basis for an Eighth Amendment claim).

[7] *See, e.g., Morrison v. Mamis*, 08 Civ. 4302, 2008 WL 5451639 at *8, *10 , 2008 U.S. Dist. Lexis 106416 (S.D.N.Y. Dec. 18, 2008) (doctor refusing to prescribe physical therapy, switch prescription pain killers, or allow use of Ben Gay by an inmate complaining of back pain and migraines does not give rise to an deliberate indifference claim), Report and Recommendation adopted by 2009 WL 2168845, 2009 U.S. Dist. Lexis 61772 (S.D.N.Y. July 20, 2009).

[8] *See, e.g.*, Evans v. Manos, 336 F. Supp. 2d 255, 262, 263 (W.D.N.Y. 2004) (inmate's opinion that doctor should have prescribed something stronger than Advil and a back brace does not give rise to an issue of fact as to whether his constitutional rights were violated).

to give plaintiff a "lower bunk" pass[9] or order other medical restrictions on plaintiff's work and other activities[10] were all medical judgments and did not deprive plaintiff of constitutionally adequate medical care. Similarly, Nurse Administrator Harris[11] and Dr. Ramineni, who each reviewed plaintiff's charts on one occasion in response to his complaints, and deferred to or confirmed Dr. Manava's treatment decisions, were clearly not deliberately indifferent to plaintiff's medical needs. Finally, Dr. Wright, who responded to plaintiff's complaints, directly or through subordinates, without personally reviewing or making medical decisions about plaintiff's condition, did not have sufficient direct involvement to be liable under Section 1983 even if a viable Eighth Amendment violation were alleged.[12]

---

[9] *See, e.g., Felix-Torres v. Graham*, No. 06-CV-1090, 2009 WL 3526644 at *8, 2009 U.S. Dist. LEXIS 98693 (N.D.N.Y. Oct. 23, 2009) (even negligently failing to assign an inmate to a lower bunk does not satisfy the subjective element of the deliberate indifference standard) (collecting cases).

[10] *See, e.g., Estelle v. Gamble*, 429 U.S. at 100-101, 106-107 (inmate who alleged doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate indifference where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice).

[11] The claims against defendant Harris would also be subject to dismissal because, as a nurse, she lacked the authority to override the medical decision of the treating prison physician. *See, e.g., Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9, 2008 U.S. Dist. LEXIS 22191 (N.D.N.Y. March 20, 2008) (social worker and psychologist in prison had no authority to override the decision of the treating psychiatrist regarding appropriate medication for an inmate/patient; further, they had no reason to know that the psychiatrist was not appropriately treating the plaintiff). See also *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (the failure of non-doctors at a prison to intercede in the medical treatment of an inmate in not unreasonable, because they lack the authority to intervene in medical decisions).

[12] Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Plaintiff's letters of complaint to Defendant Wright and Commissioner Fischer are insufficient to establish personal involvement by the DOCS Chief

### C.  Patients' Bill of Rights and Americans with Disabilities Act

In his complaint, plaintiff makes passing references to violations of his rights under the Patients' Bill of Rights and the "Disability Act," presumably the Americans with Disabilities Act ("ADA"). The Patients' Bill of Rights was created by New York state law, NY Public Health Law §2803(1)(g), and a violation of state law would not implicate a federal right supporting a claim under Section 1983. *See, e.g., Fox v. Brown*, 9:05-Cv-1292 (LEK/GJD), 2007 WL 586723 at *9, n.5, Report-Recommendation adopted at 2007 U.S. Dist. LEXIS 11876 (N.D.N.Y. Feb. 21, 2007); *Parker v. DeBuono*, 98 Civ. 5765, 2000 WL 223841 at *2, 2000 U.S. Dist. LEXIS 2131 (S.D.N.Y. Feb. 25, 2000). For the reasons set forth below, plaintiff also fails to state a viable claim under the ADA.

The ADA is applicable to inmates in state correctional facilities. *See Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005)(both the ADA and the Rehabilitation Act are applicable to inmates). Under the ADA, the inmate must

---

Medical Officer, because he referred the matter to subordinates for decision and did not personally make any medical decisions regarding the plaintiff. *See, e.g. Gonzalez v. Wright*, 07-Civ-2898, 2009 WL 3149448 at *22-*23, 2009 U.S. Dist. LEXIS 91461 (S.D.N.Y. Sept. 30, 2009) (DOCS Medical director not personally involved in alleged deprivation of adequate medical care by virtue of the fact that he received a complaint from plaintiff and delegated it to a subordinate for response) (*citing Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS commissioner was not personally involved in alleged constitutional violation where he only referred plaintiff's complaint to a subordinate for decision)). Even if Dr. Wright or other DOCS officials had ignored some of plaintiff's complaints, it would not make them liable under Section 1983 for the alleged constitutional violations. *See, e.g., Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4, 1995 U.S. Dist. LEXIS 5144 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.").

establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).

In order to establish a claim under the ADA, the plaintiff must first show that he has a disability. *Farid v. Bouey*, 554 F. Supp. 2d 301, 326 (N.D.N.Y. 2008). Under the Title II of the ADA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *Doe v. Goord*, No. 04-CV-570, 2004 WL 2829876 at *17, 2004 U.S. Dist. LEXIS 24808 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). Plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel*, 287 F.3d at 147.

Major life activities include, among others, caring for oneself; performing manual tasks; seeing, hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A). Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B). Plaintiff in this case has not specifically identified a disability, nor has he identified a "major life activity" that he claims has been "substantially limited." A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance most people's daily lives." *Toyota*

*Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).[13]

Plaintiff has osteoarthritis in his lower back. He failed to identify either any major life activity that was substantially limited by this impairments or any activity or program in which he could not participate. Nor did he allege what accommodation would have allowed him to participate in such a program. Thus, plaintiff's passing reference to the ADA does not state any claim for relief under that statute.

### D. Qualified Immunity

Defendant has invoked qualified immunity with respect to the plaintiff's claim for deliberate indifference to his serious medical needs under the Eighth Amendment, arguing that no such constitutional violation was established. Given that this court has recommended that the defendants' motion to dismiss be granted, the qualified immunity argument need not be addressed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss under FED. R. CIV. P.12(b)(6) (Dkt. No. 21) be GRANTED and the complaint be dismissed, without prejudice, in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

---

[13] The court notes that amendments to the ADA, that took effect January 1, 2009 broadened the scope of the definition of disability, partially superceding *Toyota Mfg. See Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 275 n.1 (W.D.N.Y. 2009)(citing ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008)). However, it has been held that these amendments do not apply retroactively, thus, they do not affect this Court's recommendation.

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: February 22, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge